UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD PEDEN,
Plaintiff,

v. CIVIL ACTION NO. 20-11019-PBS

DEMOCRATIC NATIONAL COMMITTEE et al.,

Defendants.

MEMORANDUM AND ORDER

OCTOBER 30, 2020

SARIS, D.J.

Before the Court are Defendants Democratic National Committee's ("DNC"), Tom Perez ("Perez") and Seema Nanda's ("Nanda") (DNC, Perez and Nanda are collectively "DNC Defendants") motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), ECF Nos. 13 and 68, respectively, ("DNC Defendants' Motions") and the remaining 43 defendants' ("Media Defendants") motion to dismiss, ECF No. 64 ("The Media Defendants' Motion") plaintiff Ronald Peden's complaint pursuant to Fed. R. Civ. P. 12(b)(6), and plaintiff Ronald Peden's ("Peden") omnibus opposition, ECF No. 73 ("the Opposition"). For the reasons set forth below the Motions are ALLOWED and this action is DISMISSED for failure to

state a claim upon which relief can be granted.[1]

I. Background

A. Factual Background

On May 28, 2020, Peden filed this action against the Democratic National Committee, the current DNC chair, along with forty-four other defendants consisting predominantly of a variety media entities and journalists, claiming a massive conspiracy to destroy Peden's nascent presidential candidacy. See generally, Compl. The following allegations are taken from the complaint.

In June 2019, Peden notified the Democratic party via his website that he intended to compete in the Democratic primary process. Compl. ¶3. From here, Peden claims that "defendants conspired to restrict the circulation of his announcement within and among the various states, and to monopolize the marketplace of political viewpoints of interest to the voting public." Compl. ¶ 3. He further claims that "[a]fter collectively scrutinizing the announcement to compete for the presidency and unilaterally concluding plaintiff's platform was not appropriate

[1] The Motions are decided on the papers pursuant to Local Rule 7.1(f) because no party requested oral argument on the Motions, and the Court concludes that a hearing is unnecessary. See L.R. 7.1(d) and L.R. 7.1(e).

to be widely seen, heard or considered by the American public, defendants illegally narrowed the scope of the national political discourse." Compl. ¶ 4. He claims that the defendants "collective refusal to acknowledge [Peden's] campaign in any material way or to inform the voting public of his desire to be considered a candidate for the 2020 Democratic nomination for President" and "include him in national polling research" resulted in "crippling" his campaign in violation of the Sherman Act and the Constitution. Compl. ¶¶ 5 and 9. He claims that "[t]hrough their combined, egregious actions, collectively and deliberately conducted to silence [Peden], obscure his candidacy and restrict dissemination of his political perspective, defendants thereby monopolized the marketplace of viewpoints against the plaintiff and in favor of their own interests." Compl. ¶ 7. Peden also claims that defendants' actions "crippled [Peden's] attempt to fairly compete for the nomination of the democratic party" and the "combined refusal to acknowledge plaintiff's campaign and the failure to even include him in national polling research conducted largely by the various media outlets, effectively muted his campaign message, prohibitively limiting him to connecting with voters on anything but a scale limited to mere personal appearances, thereby nullifying his campaign to the detriment of the voting public. .

." Compl. ¶9. Peden also contends, without any factual support, that the defendants' conduct also constitutes discrimination against his campaign "based upon race." Compl. ¶¶14-15.

Critically, Peden never reveals any concrete details of the alleged conduct, but rather appears to admit the inherently speculative nature of his conspiracy theory in the complaint, alleging: "[s]uch uniform actions against [Peden's] candidacy could not have been the result of mere chance, but only through an agreement orchestrated by DNC Chairman Tom Perez and desiring to assist the campaign of the now presumptive party nominee who's prospects, resting predominately on support from among Black American voters, would have been most in jeopardy from [Peden's] campaign and accomplished, as well, accompanied by the considerable influence of respected PBS Newshour anchor, Judy Woodruff, endeavoring to vindicate the professional character of a long-time colleague believed to have been unfairly besmirched in [Peden's] campaign announcement." Compl. ¶ 6.

B. Procedural Background

The DNC Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction based upon lack of standing, and Fed. R. Civ. P. 12(b)(6) for failure to

state a claim upon which relief can be granted.[2] The Media Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Peden filed an omnibus opposition to the Motions.

II. Legal Standard

When opposing a motion to dismiss for lack of subject matter jurisdiction made pursuant to Fed. R. Civ. P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). When ruling on a 12(b)(1) motion the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). Put another way, "at the pleading stage, [Peden] bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action" and "[n]either conclusory assertions nor unfounded speculation can supply the necessary heft." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016). "When a court is confronted with motions to dismiss

[2] Defendants Perez and Nanda also move to dismiss on the ground of insufficient service of process under Fed. R. Civ. P. 12(b)(5). ECF No. 63.

under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter," because "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp., Inc., 404 F. Supp. 3d 470, 478 (D. Mass. 2019) (quoting Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149–50 (1st Cir. 2002). Similarly, "[t]he sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011).

## III. Analysis

### A. Peden Lacks Prudential Standing to Bring Claim Under the Sherman Act

DNC Defendants argue[3] that Peden lacks Article III standing. Standing is a threshold question in every case; "[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case."

[3] Perez and Nanda incorporate by reference the DNC's motion to dismiss arguments under Fed. R. Civ. P. 12(b)(1) in their motion to dismiss. ECF No. 68.

United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992). To satisfy the case-or-controversy requirement of Article III of the United States Constitution, plaintiffs bear the burden of establishing: (1) that they have suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent"; (2) that the injury is "'fairly traceable' to the actions of the defendant"; and (3) that the injury will likely be redressed by a favorable decision. Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); see also Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 35 (1st Cir. 2020). The Court need not decide the murky issues of constitutional standing where, under the doctrine of constitutional avoidance, the case can largely be resolved on prudential standing because the remedy sought here, an injunction under the Sherman Act, is unavailable under prudential standing. Johnson v. Commission on Presidential Debates, 869 F.3d 976, 982, (D.C. Cir. 2017).

As to the Sherman Act claims, Peden lacks prudential antitrust standing under the Sherman Act, 15 U.S.C. §§ 1 and 2, because he does not plausibly allege "an actual or threatened injury of the type the antitrust laws were intended to prevent that . . . [were] . . . caused by the defendant[s'] wrongdoing." Johnson, 869 F.3d 976, 983 (D.C. Cir. 2017). That is,

"antitrust laws protect market (i.e. economic) competition." Id. Individual injuries, to the extent they are well-pleaded at all, such as "free media, campaign donations, and federal matching funds" are individual competitor injuries that do not rise to injury to competition under the Sherman Act inasmuch as they are "injuries . . . as *individual candidates* in a *political contest* for votes." Id. (emphasis in original). Moreover, under the Sherman Act, "neither the business of conducting the government nor the holding of a political office constitutes 'trade or commerce' within the meaning of the Sherman Act." Id. (citations omitted). Indeed, the First Circuit long ago foreclosed the type of action Peden contemplates here:

> [T]he Supreme Court has made clear its refusal to permit parties to "impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act." Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 137, 81 S.Ct. 523, 529, 5 L.Ed.2d 464 (1961). See also United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The only exceptions to this rule countenanced by the Court were situations in which the political activity at issue was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Id. 365 U.S. at 144, 81 S.Ct. at 533...This case involves political opponents, not commercial competitors; and political objectives, not market place goals.

Council for Employment & Econ. Energy Use v. WHDH Corp., 580 F.2d 9, 12 (1st Cir. 1978). Here, Peden's claim that the Democratic National Committee's interests and certain media interests' have "monopolized the marketplace of political viewpoints of interest to the voting public," Compl. ¶7, has captured, in concept, "what political scientists call a 'political economy,' . . .[a] phrase [that] is merely a term of art." Johnson, 869 F.3d at 983. "Short of alleging Americans are engaged in a widespread practice of selling their votes—which the Complaint does not do—the 'market' . . . [Peden] identif[ies] is no more regulated by the antitrust laws than the 'marketplace of ideas' or a 'meet market.'" Id. Peden's attempt to shift his claim from jilted candidate to a purveyor of information in the market place is simply a non-starter, and his reliance on Associated Press v. United States, 326 U.S. 1 (1945), is inapposite as it stands for the unremarkable proposition that the Associated Press could not restrain trade by preventing its members from selling information to non-members while simultaneously setting up a system permitting members preventing non-members from joining. Id. at 4. Nothing of the sort is alleged here. Peden's disappointment in the lack of support and media coverage does not meet antitrust standing requirements to state a cognizable violation of the Sherman Act.

Accordingly, the antitrust claims are DISMISSED under Fed. R. Civ. P. 12(b)(6) for lack of prudential antitrust standing.

Finally, Peden's constitutional claims under the First, Fifth and Fourteenth Amendments, ostensibly brought under 42 U.S.C. § 1983, fail to state a claim upon which relief can be granted. Section 1983 "affords a private right of action in favor of persons whose federally assured rights are abridged by state actors." Parker v. Landry, 935 F.3d 9, 14 (1st Cir. 2019) (quoting Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). Here, as Defendants correctly argue, Peden fails to allege the Defendants are state actors. Peden's Opposition cites to Associated Press, a case that does not address Section 1983 claims. Peden further argues that the Media Defendants somehow have a "responsibility to inform the public of government activity, including elections…potentially giv[ing] the media defendants the color of being government actors" and that the DNC Defendants "indirectly facilitate the operation of government." Opp. 4. These arguments are conclusory and, in any event, are not reasonable inferences from the complaint. On this record, the complaint fails to state a claim upon which relief can be granted as to the remaining constitutional claims.

IV. Conclusion and Order

For the aforementioned reasons, the Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 13, 64 and 68) are hereby ALLOWED. All other pending motions are DENIED as MOOT. The Clerk is directed to enter a separate order of dismissal.

SO ORDERED.

/s/ Patti B. Saris
UNITED STATES DISTRICT JUDGE